

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

LMP HOLDINGS, LLC,

     Plaintiff,

v.                         Civil Action No. 3:12cv440

PLY ENTERPRISES, LLC,

     Defendant.

### MEMORANDUM OPINION

This matter is before the Court on Plaintiff LMP Holdings, LLC's MOTION TO DISMISS PLY ENTERPRISES, LLC'S COUNTERCLAIM (Docket No. 13) pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons set forth herein, the motion will be granted.

### FACTUAL BACKGROUND

Eastern Analytical Laboratories, Inc. ("EAL"), an entity "affiliated"[1] with LMP Holdings, LLC ("LMP" or "Plaintiff"), entered into a lease (the "Lease") on July 1, 2009, to lease real property from PLY Enterprises, LLC ("PLY" or "Defendant"). (Compl. ¶¶ 7-8, 10.) LMP is a party to the Lease as guarantor of EAL's obligations. (Compl. ¶ 9.) The Lease gave LMP the contingent right to purchase the property from PLY upon conclusion of the initial three-year term. (Compl. ¶ 11.)

---

[1] The parties both describe the relationship as an affiliation without elaboration. (See Compl. ¶ 8; Def.'s Memo., Docket No. 6, at 2.)

Additionally, the Lease gave LMP the right to purchase the real property from PLY "at any time after the first two (2) years of the term of the Lease by payment of the full purchase price." (Compl. ¶ 12.)   If LMP was unable to purchase the property upon the end of the initial term, the Lease was to automatically extend for an additional three-year period.   (Compl. Exh. A ¶ 18.)   The initial term of the Lease expired on June 30, 2012; and, since that time, EAL has made rental payments under an extended lease term.   (Compl. ¶¶ 10, 28.)

Paragraph 18 of the Lease details the procedure for determining the "full purchase price."   (Compl. ¶ 14.)   The parties were first required to attempt good faith negotiations to determine the "fair market price." (Compl. ¶ 14.) If the parties could not agree on a fair market value earlier than ninety days prior to the end of the lease term, the parties were each to select an appraiser "experienced in performing appraisals of commercial real estate in Chesterfield County, Virginia," to perform an appraisal to determine the property's "fair market value."   (Compl. ¶ 14.)   Additionally, the two appraisers selected by the parties would jointly select a third appraiser to conduct an independent appraisal of fair market value. (Compl. ¶ 14.)   The appraisers were to conduct their fair market value appraisals independently, and the parties agreed that the

2

"average of the three (3) appraisals shall be the fair market value/purchase price of the property." (Compl. ¶ 14.)

Paragraph 18 of the Lease also governed the parties' obligations in terms of the possible sale of the property from PLY to LMP.  Paragraph 18 provides:

> "At the end of the initial three (3) year term of this Lease, provided the conditions stated below are fulfilled, [LMP] will purchase, and [PLY] will sell, the Premises for its fair market value as defined herein. . . . <u>It shall be a condition to closing on the purchase <u>that</u> [LMP] pay at least 20% of the purchase price as a down payment at closing . . . . If</u> [LMP] <u>is unable to make the down payment</u> of at least 20% of the Purchase Price, the term of this Lease will [sic] extended . . . for an additional period of three (3) years . . . . Any provision of the foregoing notwithstanding, [LMP] shall have the right to purchase the Premises from [PLY] at any time after the first two (2) years of the term of this Lease by payment of the full purchase price . . . ."

(Compl. Exh. A ¶ 18.) (emphasis added).

LMP and PLY were unable to agree on a purchase price.[2] (Compl. ¶ 13.) LMP's appraiser valued the property at $405,000. (Compl. ¶ 16.)  PLY's appraiser valued the property at $860,000. (Compl. ¶ 18).  The independent appraiser valued the property at $415,000.  (Compl. ¶ 17.)  The average of these three values is $560,000.

---

[2]  LMP was unwilling to pay more than $450,000, while PLY was unwilling to sell for less than $600,000. (Compl. ¶ 13.)

LMP filed this action against PLY alleging that the $860,000 valuation reached by PLY's selected appraiser is inappropriate. The Complaint alleges breach of contract and demands specific performance from PLY.  In its Counterclaim, PLY alleges that LMP repudiated the Lease by filing this action in lieu of purchasing the property for the average of the three appraised values.  PLY seeks specific performance of LMP's alleged obligation.

## LEGAL STANDARD

Fed. R. Civ. P. 12(b)(6) permits a party to move for dismissal of a claim if the complaint fails "to state a claim upon which relief can be granted."  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

Courts should assume the veracity of all well-plead allegations within the complaint, and should deny a motion to dismiss where those well-plead allegations state a plausible claim for relief.  Id. at 679.  A claim is "plausible" when the plaintiff pleads facts sufficient to allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct.  Twombly, 550 U.S. at 556.  A court should grant a motion to dismiss, however, where the allegations are nothing

4

more than legal conclusions, or where they permit a court to infer no more than a possibility of misconduct. See Iqbal, 556 U.S. at 678-79.

Although courts generally do not consider extrinsic evidence in deciding motions under Rule 12(b)(6), "a court may consider . . . documents central to a plaintiff's claim, and documents sufficiently referred to in the complaint without converting the [motion] into one for summary judgment, so long as the authenticity of such documents is not disputed." PBM Nutritionals, LLC v. Dornoch Ltd., 667 F. Supp. 2d 621, 626 (E.D. Va. 2009) (citing Witthohn v. Fed. Ins. Co., 164 Fed. App'x 395, 396 (4th Cir. 2006)). Where factual allegations in the complaint are contradicted by such documents, those allegations need not be afforded the presumption of truth normally granted to factual allegation contained within the complaint. See Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004) (quoting In re Burlington Coat Factory Sec. Litig.. 114 F.3d 1410, 1426 (3d Cir. 1997)).

## DISCUSSION

PLY has failed to allege facts that are sufficient to survive the pleading standards described above. Specifically, PLY's Counterclaim does not allege that LMP is capable of making the 20% down payment that is a condition precedent to LMP's

obligation to purchase the property.  Nor has PLY adequately alleged that LMP waived the condition to the obligation to purchase, or that the prevention doctrine is applicable. Finally, PLY has failed to allege that it has no adequate remedy at law.

## A. LMP Failed to Allege That PLY is Capable of Making the 20% Down Payment, a Condition Precedent to its Obligation to Purchase the Property

PLY argues that LMP has repudiated the Lease by bringing this action instead of going forward with a purchase of the property.  (Countercl. ¶ 14.)  However, the failure to allege that LMP is able to make the 20% down payment that the contract requires is fatal to PLY's Counterclaim because paragraph 18 of the Lease states that "[i]t shall be a condition to closing on the purchase that [LMP] pay at least 20% of the purchase price as a down payment at closing," and thus the Counterclaim fails to allege satisfaction of a contractual condition precedent to LMP's liability.

Further, the Lease requires an extension of the Lease's original term for an additional three years if LMP is unable to make the required down payment.  (Compl. Exh. A ¶ 18).  Because LMP is currently making monthly rental payments to PLY in accordance with an extended Lease term, PLY's repudiation claim necessarily depends on LMP's failure to purchase the property

from PLY and the failure to allege that LMP has the necessary means to do so.

PLY argues that the 20% down payment was not a condition precedent to the obligation to purchase the property, contending instead that this provision is simply "one of many covenants between the parties." (Def.'s Opp'n 5-6, Docket No. 15.) As it must, PLY concedes that "[a] party seeking to recover on a contract right must allege and prove performance of any express conditions precedent upon which his right of recovery depends." (Def's Opp'n 6, Docket No. 15.) Lerner v. Guldelsky Co., 334 S.E.2d 579, 584 (Va. 1985). But, says PLY, because the contract uses the term "condition" to describe the obligation instead of "condition precedent," the contract does not set a condition precedent. (Def.'s Opp'n 6, Docket No. 15.) Relatedly, PLY argues that the use of the term "condition" makes the phrase ambiguous, and that the Court should therefore construe the term as a covenant rather than a condition precedent. (Def.'s Opp'n 7, Docket No. 15.) See also United States ex rel. Va. Beach Mech. Servs., Inc. v. Samco Constr. Co., 39 F. Supp. 2d 661, 673 (E.D. Va. 1999) (noting courts generally resolve ambiguity concerning a payment term as a promise).

Both arguments, however, ignore the plain meaning of the word "condition," particularly when viewed in perspective of the first sentence of paragraph 18 of the Lease which requires LMP to

7

purchase the property "provided that the conditions stated below are fulfilled." The choice of the word "condition" to qualify the duties owed by each party unambiguously establishes a condition precedent to the purchase obligation. See 8 Corbin on Contracts § 30.7 (Joseph M. Perillo ed., rev. ed. 2012)("[W]e focus our attention on those additional facts and events necessary to A's case against B, facts and events subsequent to the making of the contract but precedent to A's right to immediate performance. These facts and events were customarily called 'conditions precedent.' With more simplicity and no less accuracy, today they may be called 'conditions.'" (internal footnote omitted)). Accordingly, LMP's obligation to purchase the property was conditioned on LMP's ability to make the 20% down payment. Because PLY failed to plead that LMP had the ability to do so, the motion to dismiss the Counterclaim must be granted.[3]

---

[3] PLY also argues that, because it alleged repudiation and anticipatory breach, a condition precedent defense is not applicable. (Def.'s Opp. 3-4, Docket No. 15.) This argument must also fail. As noted above, LMP is in fact performing its obligations under the Lease by making rental payments in the extended term. The failure to purchase the property is, therefore, the only basis for the alleged repudiation/anticipatory breach. PLY, therefore, still must allege LMP's ability to make the required down payment, because the contract makes the obligation to purchase conditional upon the ability to make the payment.

## B.   Neither Waiver nor the Prevention Doctrine Are Applicable Here

PLY's arguments based on the alleged waiver of a condition precedent and on the prevention doctrine also fail.  PLY claims that, by going through the appraisal process detailed in Lease paragraph 18 "without claiming that it did not have the 20 percent down payment as an excuse," LMP impliedly waived the 20% down payment condition.  This argument is without merit.  (Def.'s Opp'n 8, Docket No. 15.)

Under Virginia law, "waiver [of a condition precedent] is the intentional relinquishment of a known right, with both knowledge of its existence and an intention to relinquish it." Hammond v. Pacific Mut. Life Ins. Co., 159 F. Supp. 2d 249, 256-57 (E.D. Va. 2001) (quoting Creteau v. Phoenix Assur. Co. of N.Y., 119 S.E.2d 336, 339 (Va. 1961)) (internal quotation marks omitted).  Additionally, an implied waiver of legal rights must be shown by the "clear and unmistakable proof of an intention to waive such rights." Id. (quoting Creteau, 119 S.E.2d at 339) (internal quotation marks omitted).  Taking the facts alleged in the Counterclaim as true and drawing all reasonable inferences in PLY's favor, the Counterclaim does not adequately allege waiver of the condition precedent because there is no adequate allegation of the knowing and intentional conduct that will support a waiver under Virginia law.

9

PLY alternatively argues that the prevention doctrine should apply to this case, (Def.'s Opp'n 9, Docket No. 15), but that argument also fails.  The Supreme Court of Virginia has held:

> Where a contract is performable on the occurrence of a future event there is an implied agreement that the promisor will place no obstacle in the way of the happening of such event, particularly where it is dependent in whole or in part on his own act; and, where he prevents the fulfillment of a condition precedent or its performance by the adverse party, he cannot rely on such condition to defeat his liability.

Parrish v. Wightman, 34 S.E.2d 229, 232 (Va. 1945)(quoting 17 C.J.S. Contracts § 468)(internal quotation marks omitted).  That is the so-called "prevention doctrine."  However, it is settled that only "active conduct of the conditional promisor, preventing or hindering the fulfillment of the condition" excuses nonfulfillment of the condition.  Id. (quoting Amies v. Wesnofske, 174 N.E. 436, 438 (N.Y. 1931) (internal quotation mark omitted)).  The Counterclaim does not allege facts sufficient to animate the "prevention doctrine."

PLY argues in its brief that a motion to dismiss is not appropriate because discovery may in fact uncover such "proof."  That misses the mark because PLY has failed to allege, in the first instance, that LMP has engaged in any "active conduct" in order to prevent or hinder its fulfillment of the 20% down payment condition.  In the absence of such an allegation, the

10

Counterclaim does not adequately posit a claim under the prevention doctrine.

**C.  PLY Has Not Alleged That it Has No Adequate Remedy at Law**

The Counterclaim must also be dismissed, insofar as it seeks equitable relief, because it fails to allege that PLY lacks an adequate remedy at law.[4]  In Virginia, as in other states, specific performance is an equitable remedy only available if there is no adequate remedy at law. See City of Manasses v. Bd. Of Cty. Sup'rs of Prince Williams Cty., 458 S.E.2d 568, 572 (Va. 1995).  Thus, a complaint failing to allege that there is no adequate remedy at law is fatally deficient.  See, e.g. Precious Interior Designs, Inc. v. Astacio, No. 07-21297-CIV, 2007 WL 3228119, at *2 (S.D. Fla. Oct. 30, 2007).

PLY takes the view that it need not plead an adequate remedy at law to seek equitable relief because federal courts allow pleading alternative causes of action and alternative remedies. See Fed. R. Civ. P. 8(a)(3).  Although it is clearly true that alternative pleading is allowed under the federal rules of procedure, it is equally clear that the allowance of alternate pleading does not relieve a party from pleading facts that are

---

[4] Rather than set out various counts to assert each potential cause of action, PLY has instead set out seven paragraphs under the heading "Facts" which state, in essence, that LMP has repudiated and breached the Lease by failing to close on the property and that, therefore, PLY has suffered damages.  One final paragraph, paragraph 17, then requests various forms of relief, both equitable and legal in nature.

sufficient to support its claim. Nor does it change the fact
that a necessary element to the award of equitable relief is the
lack of an adequate remedy at law. Although the Counterclaim
asks for equitable relief, it makes no allegation that legal
relief would be insufficient. Cf. Suntrust Mortg., Inc. v. Old
Second Nat'l Bank, No. 3:12-cv-99, 2012 WL 1656667, *3 (E.D. Va.
May 10, 20120) (noting the general rule that "a litigant who
seeks specific performance must demonstrate the lack of an
adequate remedy at law," but declining to dismiss the complaint
because the contract at issue provided specific performance was
an available remedy).

PLY further argues that specific performance should be
available because the Counterclaim involves the sale of real
estate, noting that Virginia law provides for the remedy of
specific performance when a buyer refuses to pay for property,
see Definite Contract Bldg. & Loan Ass'n v. Tumin, 164 S.E. 562,
566 (Va. 1932), and additionally noting that specific performance
may be the most appropriate remedy for a breach of a contract for
the sale of real estate because of the uniqueness of real estate
and the burdens that come with ownership. See Bell v. Alsip, 435
So. 2d 840, 842 (Fla. Dist. Ct. App. 1983). That, of course, is
true, but it does not repair the failure to allege facts that a
legal remedy would be insufficient to remedy the alleged harm.

**CONCLUSION**

For the foregoing reasons, the Counterclaim fails to state a claim upon which relief can be granted and, therefore, must be dismissed under Fed. R. Civ. P. 12(b)(6).  Accordingly, LMP HOLDINGS, LLC'S MOTION TO DISMISS PLY ENTERPRISES, LLC'S COUNTERCLAIM (Docket No. 13) will be granted, but dismissal will be without prejudice to the filing of an amended pleading. Counsel for PLY is admonished that no such pleading could properly be filed under Fed. R. Civ. P. 11 without the requisite factual predicate allegations.

It is so ORDERED.

_____ /s/      REP

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: September 21, 2012

13